## Merriweather v. Western Union Telegrah Company.

(Decided March 28, 1919.)

### Appeal from Franklin Circuit Court.

Telegraphs and Telephones—Negligence—Limiting Liability by Contract.—Since the passage of the Act of Congress of June 18, 1910 (36 St. Lar. 544) a telegraph company may by contract limit its liability for negligence in failing to deliver an unrepeated interstate message, and this right is unaffected by the Acts of Congress approved March 4, 1915, and August 9, 1916, known as the first and second Cummins Acts.

IRA JULIAN for appellant.

A. E. RICHARDS, A. B. BENSINGER and ALBERT T. BENEDICT, of New York, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The only question upon this appeal is whether or not a telegraph company may by contract limit its liability for negligence in failing to deliver an unrepeated interstate message. The lower court held such a contract valid and plaintiff has appealed.

Prior to the act of congress, approved June 18, 1910, it was held by this court, in Chapman v. Western Union Telegraph Co., 90 Ky. 265; Western Union Telegraph Co. v. Eubanks, 100 Ky. 591; Postal Telegraph Co. v. Schaefer, 110 Ky. 907 and Postal Telegraph Co. v. Terrell, 124 Ky. 822, that such a contract was contrary to public policy and violative of sec. 196 of the Constitution of the state, and therefore invalid, but it was held in Western Union Telegraph Co. v. Lee, 174 Ky. 212, upon an exhaustive review of the authorities that by the act of June 18, 1910 (36 St. Lar. 544), the federal congress, in the exercise of its exclusive authority to regulate interstate commerce had authorized such contracts and that neither the local public policy nor constitution could affect the validity of such an interstate contract, nor could either affect, it would seem, independent of the act of 1910, the liability of a common carrier, where the delivery was to be made outside of the state, and the damage alleged is mental suffering only, as is the case here. Southern Express Co. v. Byers, 240 U. S. 610, 60 L. Ed. 825.

However, we shall confine ourselves to a consideration of the contention of plaintiff that by the amendments to the Carmack Amendment of March 4, 1915 (38 St. Lar. 1196) and August 9, 1916 (39 St. Lar. 538) known as the first and second Cummins Acts, the rule announced in Western Union Tel. Co. v. Lee, *supra*, has been changed and therefore that case is no longer authoritative.

It should be noticed first that the Lee case was rested upon the act of June, 1910, and not upon the Carmack Amendment, approved June 29, 1906, which does not seem to have ever been held to apply to telegraph and telephone companies, notwithstanding it was held in Adams Express Co. v. Croninger, 226 U. S. 491, to occupy the entire field of legislation and supersede all state rules, laws and regulations pertaining to interstate commerce; on the contrary, it was held by this court, in the Lee case, "that congress had not acted upon the subject of interstate messages until the act of June 18, 1910."

To the same effect, and in addition to the authorities cited in the Lee case, see Cultra, &c. v. Western Union Tel. Co., 44 Inter. Com. Com. R. 673.

It would therefore seem improbable that congress, in the Cummins Amendment to the Carmack Amendment, which did not affect telegraph and telephone messages, and referred rather to "any common carrier, railroad or transportation company receiving *property* for transportation," intended to alter the provisions of the act of 1910, which in explicit terms regulated interstate messages, and the ability of such common carriers to contract with reference thereto, even though of course all these acts treat of interstate commerce and are amendatory to the original act of 1887.

Insofar as applicable here, the acts of 1906, 1915 and 1916, *supra,* deal with and refer to the liability of common carriers for losses to property transported, while the act of 1910 refers to and deals with the transmission by common carriers of interstate messages, plainly different classes of interstate carriers and commerce, unless telegraph and telephone messages are property received for transportation.

That the Carmack Amendment, as originally enacted, and as changed by the Cummins Amendment in dealing with carriers' liability relates only to liability for property losses is too apparent for argument, since it expressly applies in both instances to "any common carrier, railroad or transportation company *receiving property for transportation;"* requires the initial carrier to issue "a receipt or bill of lading therefor," when it receives *"property for transportation* from a point in one state to a point in another" makes the initial carrier liable "for any loss, damage or injury to *such property* caused by it" or by any common carrier, railroad or transportation company to which such property may be delivered; and affirmatively declares that no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability imposed. And in addition, as finally amended, provides that "any such common carrier, railroad or transportation company so receiving *property for transporation* shall be liable for the full, actual loss, damage or injury to *such property* caused by it or by any such common carrier, &c., to which such property may be

delivered," notwithstanding any limitation of liability or of the right of recovery, however attempted.

It therefore remains only to determine whether or not a message received for transmission is property received for transportation as contemplated by the Carmack and Cummins Amendments. That it is not seems clear not only from the ordinary meaning of the terms, as apparently was recognized in sec. 15 of the act of 1910, where the two classes are separately specified, but as well from the essential differences in the character of the services performed and the rules of law affecting liability in connection therewith, as pointed out in Primrose v. Western Union Tel. Co., 154 U. S. 17, thus:

"The rule of the common law by which common carriers of goods are held liable for loss or injury by any cause whatever, except the act of God, or of public enemies does not extend even to warehousemen or wharfingers or to any other class of bailees, except innkeepers, who, like carriers, have peculiar opportunities for embezzling the goods or for collusion with thieves. The carrier has the actual and manual possession of the goods; the identity of the goods which he receives with those which he delivers can hardly be mistaken; their value can be easily estimated and may be ascertained by inquiry of the consignor and the carrier's compensation fixed accordingly and his liability in damages is measured by the value of the goods. But telegraph companies are not bailees in any sense. They are entrusted with nothing but an order or message which is not to be carried in the form or characters in which it is received, but it is to be translated and transmitted through different symbols by means of electricity and is peculiarly liable to mistakes. The message can not be the subject of embezzlement; it is of no intrinsic value; its importance can not be estimated, except by the sender, and often can not be disclosed by him without danger of defeating his purpose; it may be wholly valueless, if not forwarded immediately; and the measure of damages for a failure to transmit or deliver it has no relation to any value of the message itself, except as such value may be disclosed by the message or be agreed between the sender and the company."

We therefore conclude that the Cummins Amendments do not apply to telegraph companies or messages,

and do not affect the rule announced in Western Union Tel. Co. v. Lee, *supra,* which must be accepted as conclusive upon the question involved here.

Judgment affirmed.