## J. M. LEFTRIDGE v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

### Division One, March 1, 1919.

1. **TELEGRAPHY: Interstate Commerce.** The transmission of messages from State to State by telegraph wire is interstate commerce, and therefore subject to regulation by Congress.

2. ————: ————: **Control Taken: Penalty to Use Diligence.** By the Act of June 18, 1910, 36 Statutes at Large, 544, Congress took control of the transmission of telegraph messages by wire from a town in one State to a town in another State, and so occupied the field as to exclude the power of a State to impose a penalty upon the telegraph company for failure to deliver, without material alteration, a message received by it in the one State to be delivered to an addressee in the other State.

3. ————: ————: **Statutory Penalty for Failure to Deliver: Superseded.** In view of the Act of Congress of June 18, 1910, taking

full control of interstate telegraph companies, and the decisions of the Supreme Court of the United States holding that said act nullifies State laws imposing a penalty on them for failure to deliver messages promptly and without material alteration, the sender cannot recover from the Western Union the penalty of three hundred dollars imposed by Sec. 3330, R. S. 1909, for its failure to transmit and use due diligence to deliver, without material alterations, into the hands of the addressee at McComb, Illinois, a message received by it for transmission at Clarence, Missouri; and in view of said decisions, that must be the ruling, even though said act imposes no such penalty, and it might therefore be said, with plausibility, that Congress had left the State free to exercise its police power on the subject.

Appeal from Macon Circuit Court.—*Hon. Nat Shelton,* Judge.

REVERSED AND REMANDED *(with directions).*

*Franklin Ferriss, George F. Haid,* and *Albert T. Benedict,* of counsel, for appellant.

(1) Interstate communication by telegraph is interstate commerce. Pensacola Tel. Co. v. Western Union Tel. Co., 96 U. S. 1; Western Union Tel. Co. v. Pendleton, 122 U. S. 347. (2) Under the original act, and prior to the amendment of June 18, 1910, Congress not having legislated on the subject, State statutes affecting interstate telegrams for acts done within the State were enforcible. Western Union Tel. Co. v. James, 162 U. S. 650; Western Union Tel. Co. v. Crovo, 220 U. S. 364. (3) Under the terms of the Interstate Commerce Act as amended June 18, 1910, Congress has taken exclusive possession of the field of interstate communication by telegraph. Hence the Missouri penalty statute cannot be applied to an interstate message by wire. Chap. 309, 36 Stat. at Large, 544; 8 U. S. Compiled Stats. 1916, p. 9053; Gardner v. Western Union Tel. Co., 231 Fed. 405; Western Union Tel. Co. v. Bilisoly, 116 Va. 562; Poor Grain Co. v. Western Union Tel. Co., 196 Mo. App. 557; Western Union Tel. Co. v. Lee, 174 Ky. 210; Western Union

Tel. Co. v. Compton, 114 Ark. 193; Western Union Tel. Co. v. Johnson, 115 Ark. 564; Durre v. Western Union Tel. Co., 165 Wis. 190; Western Union Tel. Co. v. Hawkins, 73 So. (Ala.) 973; Western Union Tel. Co. v. Spencer, 156 Pac. (Okla.) 1175; Hall v. Western Union Tel. Co., 94 S. E. (S. C.) 870; Norris v. Tel. Co., 174 N. C. 92; Western Union Tel. Co. v. Schade, 137 Tenn. 214; Bailey v. Western Union Tel. Co., 97 Kan. 619; Strauss Gas & Iron Co. v. Western Tel. Co., 59 Pa. 122. (4) The questions in the case properly raised by demurrer. La Cost v. Chicago, R. I. & P. Ry. Co., 203 S. W. (Ark.) 586; Davis v. Western Union Tel. Co., 202 S. W. 292; Taylor v. Western Union Tel. Co., 204 S. W. 818; Western Union Tel. Co. v. Johnson, 115 Ark. 534; Durre v. Western Union Tel. Co., 165 Wis. 190.

BROWN, C.—This is a suit against the Western Union Telegraph Company, a corporation, to recover the penalty of three hundred dollars imposed by the terms of Section 3330 of the Revised Statutes of this State (1909), for failure to transmit and use due diligence to deliver into the hands of the addressee at McComb, Illinois, without material alteration, a telegram delivered to it by plaintiff on May 21, 1915, at its office in Clarence, Missouri, for that purpose, all charges being paid. The telegram was materially altered before delivery by the substitution of the word "dead" for the word "bad."

No fault is found with the form of the petition except as indicated in a general demurrer filed thereto with the following specification: "And for the further reason that said petition on its face shows that the message upon which this suit is based was filed at the town of Clarence in the State of Missouri and destined to the town of McComb in the State of Illinois and is therefore interstate commerce, so that the statute of Missouri, Section 3330, under which this suit is brought if construed as authorizing the recovery of the penalty

therein provided in respect to such message would be unconstitutional, null and void and in violation of Article 1, Section 8 of Subdivision 3 of the Constitution of the United States conferring on Congress the power to regulate commerce among the several states, and would also be in violation of and in opposition to the acts of Congress passed and approved in pursuance of said Article I, Section 8 of said Subdivision 3, and especially the act of Congress passed and approved June 18, 1910, being the Thirty-sixth Statute at Large of the United States, at page 539.''

The demurrer was overruled, and the defendant declining to plead over, judgment was entered for plaintiff, from which the defendant prosecutes this appeal.

The only question presented is whether the provision of the state statute imposing the penalty sued for was, at the time this message was delivered to the defendant for transmission, valid and operative under the provisions of the interstate commerce clause of the Constitution of the United States and the acts of Congress upon the same subject.

That the transmission of messages from State to State by means of telegraph is commerce among the several states, and therefore subject to regulation by Congress under the power granted in Section 8 of the First article of the Federal Constitution, is unquestioned. [Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U. S. 1; Telegraph Co. v. Texas, 105 U. S. 460; Western Union Telegraph Co. v. Pendleton, 122 U. S. 347; Western Union Telegraph Co. v. James, 162 U. S. 650.] It is equally well settled that the character of these carriers as instruments of interstate commerce does not relieve them from operation of laws enacted by the states in the exercise of their power over men and things situated within their jurisdiction. This control covers the entire field of human activity, both civil and criminal, within their borders. Contracts made within the State are construed and

enforcible according to its laws, and acts are adjudged crimes by the same standard. Congress, by failing to legislate upon the subject of interstate commerce, did not leave the states without juridiction to enforce civil rights and redress civil wrongs incident to its prosecution within their borders.

The enactment by Congress of the interstate commerce law in the exercise of the constitutional power changes this condition materially with respect to interstate carriers by rail and placed them under the control of the commission it created, in many respects. This control was extended by laws enacted from time to time in the interest of safety and uniformity, until the instrumentalities of interstate transportation were controlled in their operation by Federal laws applying to every detail in the relation of these carriers to the public as well as to their own employees, leaving no room for the intervention of the State, which still retained, in most respects, the power to regulate telegraphic agencies in their relation to the public. [Western Union Telegraph Co. v. James, supra; Western Union Telegraph Co. v. Milling Co., 218 U. S. 406; Western Union Telegraph Co. v. Crovo, 220 U. S. 364.]

The only question in this case is whether Congress has now, by the Act of June 18, 1910, 36 Statutes at Large, 544, occupied the field covered by this suit so as to exclude the power of the State to impose upon the Telegraph Company a penalty for its failure to deliver a message received by it in this State to the addressee in another State without material alteration. It would be difficult to imagine a cleaner illustration not only of the interstate character of the transaction, but also the interstate character of the control assumed by this State, in which the only act necessarily performed is the harmless one of receiving the message and payment for its transmission. The act or failure to act which incurs the penalty is to be performed in another State. It is not contemplated that the law should hold its ear to the instrument receiving it in the foreign

State to ascertain whether it gives forth the proper sound. The operator who writes it down is the one who puts it in words which it did not contain, for delivery.

If the duty of the Telegraph Company in receiving and handling this message is completely covered by the Interstate Commerce Act as amended in 1910, it is plain that the State law prescribing the performance of the duty and imposing the penalty for its non-performance is thereby abrogated, for when it had performed its entire duty under the paramount law there was no room for further control. This principle has been so often applied in cases involving the acts of Congress relating to employers' liability and safety appliances that it would be futile to cite the many cases in the Federal and State courts which have placed it outside the region of legitimate debate. In the late case of Holloway v. Missouri, Kansas and Texas Railway Company, 276 Mo. 490, this court said: "When Congress, in the exercise of its plenary constitutional power, enacts a law relating to a particular subject, the statute so enacted is not only paramount to all State legislation upon that subject, but the legislative power of the State to occupy the same field ceases." It only remains to state whether Congress has occupied the field we are now traversing.

By the first paragraph of Section One of the act to regulate commerce as amended by the Act of June 18, 1910 (36 Statutes at Large, 545, United States Compiled Statutes, 1918, sec. 8563), it is provided as follows:

"That the provisions of this act shall apply to any corporation or any person or persons engaged in the transportation of oil or other commodity, except water and except natural or artificial gas, by means of pipe lines, or partly by pipe lines and partly by railroad, or partly by pipe lines and partly by water, *and to telegraph, telephone and cable companies (whether wire or wireless), engaged in sending mes-*

.sages from one State, Territory or District of the United States to any other State, Territory or District of the United States, or to any foreign country, who shall be considered and held to be common carriers within the meaning and purpose of this act; . . . provided, however, that the provisions of this act shall not apply to . . . nor shall they apply to the transmission of messages by telephone, telegraph or cable wholly within one State and not transmitted to or from a foreign country from or to any State or Territory as aforesaid." The amendatory words are in italics.

Paragraph Three of the same section as amended, provides:

"All charges made for any service rendered or to be rendered in the transportation of passengers or property and for the transmission of messages by telephone, telegraph or cable as aforesaid, or in connection therewith, shall be just and reasonable, and every unjust and unreasonable charge for such service or any part thereof is prohibited and declared to be unlawful: Provided, that messages by telegraph, telephone or cable, subject to the provisions of this act, may be classified into day, night, repeated, unrepeated, letter, commercial, press, Government, and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages. And provided, further, that nothing in this act shall be construed to prevent telegraph, telephone and cable companies from entering into contracts with common carriers for the exchange of services."

Section Three makes it unlawful for any common carrier subject to the provisions of the act to give any unjust or unreasonable preference. Section Ten provides that any common carrier subject to the provision of the act who shall violate any of its provisions shall be guilty of a misdemeanor and subject to a fine not to exceed $5000. Section Fifteen of the act gives the Interstate Commerce Commission upon investigation plenary power to prescribe what shall be reasonable

rates to be charged by telegraph companies as well as of other common carriers under its jurisdiction.

If there is anything provided in this act or in any other Congressional legislation covering the same field it has not been called to our attention. The provisions of the Interstate Commerce Act imposing the penalties being limited to cases of violation of the terms of the act, which contains no provision to which our attention has been directed regulating or expressly requiring the delivery of interstate messages promptly and without material alteration, to the addressee at the place of destination, it may be contended that the subject has been deliberately left by Congress to the exercise of the police power of the several states having cognizance of the wrong. There is plausibility in the argument, for it is not to be presumed that Congress would withdraw from the State the right to protect persons and property within its limits otherwise than by the expression of a clear intention to that effect. This argument in its application to this case has been met by the Supreme Court of the United States in the case of Western Union Telegraph Co. v. Brown, 234 U. S. 542, in which it was sought to recover damages authorized by a statute of South Carolina for the non-delivery of a telegram transmitted from that State to the addressee in the District of Columbia. The Court held the statute to be unconstitutional as an attempt to regulate commerce among the states in so far as it attempted to determine the conduct required of the Telegraph Company in transmitting a message from South Carolina to the District of Columbia, by determining the consequences of not pursuing such conduct. This case was followed in Western Union Telegraph Co. v. Bilisoly, 116 Va. 562. That case like the one at bar was a suit for a penalty imposed by the State of Virginia for non-delivery of a message filed for transmission in that State. The same question afterward came before the United States Circuit Court of Ap-

peals of this circuit on appeal from the Western District of Oklahoma. [Gardner v. Western Union Telegraph Co., 231 Fed. 405.] The action was by ·the addressee for delay in delivery to him in Oklahoma of a message transmitted from Kansas. The question arose upon the validity of the following agreement printed upon the back of the message: ."That the company should not be liable for damages or statutory penalties in any case where the claim was not presented in writing within sixty days after the message was filed with the company for transmission." The Constitution of Oklahoma made this limitation as to time null and void. The court held that this constitutional provision was not applicable to the interstate messages.

These three cases together stand upon the theory that although the Amendment of 1910 contains no provision directly controlling the action of the respondent with respect to the delivery of this message it was an exercise of the constitutional authority of Congress by which the company was placed under the control of the Interstate Commerce Commission with respect to its rates, rules and classification of its contracts, including the equality and fairness of its service and charges; that by imposing certain penalties for violation of its duties in these respects it exercised its undoubted prerogative to control the conduct of this class of business by penal process, and that having occupied this field of legislation the State was excluded. If Congress chose to let the rights and duties of the company rest upon the common law, the State could not complain.

This is the foundation upon which these cases stand. We think it is sound even without the authority of the Brown case, which controls us. The judgment of the circuit court for Macon County is reversed, and the cause remanded with directions to enter judgment in accordance with these views.

*Railey, C.,* concurs.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur.