## J. E. BREWER et al., Appellants, v. POSTAL TELE-GRAPH CABLE CO., Respondent.

### Kansas City Court of Appeals, June 26, 1920.

1. **TELEGRAMS: Interstate Commerce: Decisions of Federal Courts.** A telegram from a point in Kansas to a point in New York is interstate commerce and is governed by the rules of decision adopted by the Federal Courts.

2. ————: ————: ————: **Limitation of Liability: Valid Condition.** Under the rules of decision adopted by the Federal Courts a limitation of liability for damages in the case of an unreported message to the amount paid therefor is a valid condition.

3. **COMMON CARRIERS: Receiving Property for Transportation: Limitation of Liability.** Act of Congress, March 4, 1915 (38 U. S. Stats. at Large, p. 1196, Chap. 176) and Act of August 9, 1916 (39 U. S. Stats. at Large, pp. 441, 442, Chap. 301) making liable for any loss, damage or injury regardless of contract or limitation any common carrier "*receiving property for transportation*" does not apply to a telegram.

Appeal from Jackson Circuit Court.—*Hon. Harris Robinson,* Judge.

AFFIRMED.

*Hal R. Lebrecht* and *L. A. Laughlin* for appellant.

*Sanford B. Ladd* for respondent.

TRIMBLE, J.—This is an action by plaintiffs, wholesale egg dealers at Abilene, Kansas, against the defendant, telegraph company, for damages arising out of the negligent transmission of a telegram from plaintiffs at Abilene to a firm in New York City. The defendant has offices in both places and a system of telegraph wires connects the two. The telegram was sent February 21, 1918.

There seems to be no controversy about the facts. On the date above mentioned plaintiffs sent an *unrepeated* message to the New York firm offering a carload of eggs by express "Shipment Friday." In the course of transmission the telegram was changed in some way so that when it was delivered to the New York firm it read "Shipment *Thursday*" instead of Friday. The firm addressed replied by telegram accepting the offer and the car was sent in Friday's shipment. The New York firm, upon the car's arrival, notified plaintiffs they had bought a shipment of Thursday and could not use Friday's shipment, wherefore the eggs had to be disposed of in the open market, resulting in a loss to plaintiffs. This loss is the damage which they herein seek to recover.

The message was a night "lettergram" written upon the usual blank form which, immediately above the written message, bore these words: "send the following Night Lettergram subject to the terms on back hereof, which are hereby agreed to." And on the back thereof was this provision: "To guard against mistakes or delays, the sender of a message should order it repeated; that is, telegraphed back to the originating office for comparison. For this, one-half the unrepeated message rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated message and paid for as such, in consideration whereof it is agreed between the sender of the message and this company as follows: 1. The company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated message, beyond the amount received for sending same. . . . . 6. This company shall not be liable for damages or statutory penalties in any case where the claim is not presented in writing within thirty days after the message is filed with the company for transmission." The charge for transmitting an unrepeated message was 60 cents which plaintiff paid. The rate for the message repeated was 90 cents, but this was not

paid nor offered to be paid. The trial court held that the condition limiting the liability of the defendant, in the case of an unrepeated message, was valid and binding on plaintiffs, and, therefore, defendant was liable to them only for the amount paid for such unrepeated message with interest, and rendered judgment for plaintiffs for 60 cents and 5 cents interest. The plaintiffs have appealed.

The message being from one State to another was one in interstate commerce, and telegraph companies transmitting such messages are now within the purview of the Interstate Comerce Act. [Poor Grain Co. v. Western Union Tel. Co., 196 Mo. App. 557, 560, 563; Leftridge v. Western Union Tel. Co., 210 S. W. 18; Postal Telegraph Cable Co. v. Warren-Godwin Lumber Co., 40 U. S. Sup. Ct. Reporter, 69; Western Union v. Boegli, 40 U. S. Sup. Ct. Reporter, 167.] It is well established that, such being the case, the rules of decision adopted by the Federal Courts are controlling with respect to interstate messages. [Poor Grain Co. v. Western Union, supra, and cases cited on page 563.] Consequently such provisions limiting the liability of the telegraph company, in the case of an unrepeated message, to the amount paid for the message are valid. [Postal Telegraph Cable Co. v. Warren-Godwin Lumber Co., supra; Western Union Telegraph Co. v. Boegli, supra; Poor Grain Co. v. Western Union Tel. Co., supra; Western Union Tel. Co. v. Lee, 174 Ky. 210; Meriweather v. Western Union Tel. Co., 183 Ky. 710; Klippel v. Western Union Tel. Co., 186 Pac. 943.]

But Congress, by the Act of March 4, 1915 (38 U. S. Stats. at Large, p. 1196, chap. 176), and the Act of August 9, 1916 (39 U. S. Stats. at Large, pp. 441, 442, ch. 301), has amended the Interstate Commerce Act so as to require by the first named Act, "Any common carrier . . . subject to the provisions of this Act *receiving property for transportation*" to issue a receipt or bill of lading therefor, and making it liable for any loss, damage or injury to such property and "no

contract, receipt, rule, regulation or other limitation
of any character whatsoever shall exempt such common
carrier,'' etc., and ''any such common carrier . . . so
receiving property for transportation . . . shall be
liable to the lawful holder of said receipt or bill of lad-
ing . . . for the full actual loss, damage or injury
to such property . . . notwithstanding any limita-
tion of liability . . . and any such limitation is
hereby declared to be unlawful and void.'' And, by the
second Act above named, Congress enacted that the
provisions of the first above mentioned Act, respecting
liability for actual loss notwithstanding any limitation
of liability and declaring such unlawful and void, should
not apply to property concerning which the carrier is
required by the Interstate Commerce Commission to
establish and maintain rates dependent upon the value
declared in writing by the shipper or agreed upon in
writing as the released value of the property, in which
case such declaration or agreement should have no
other effect than to limit liability to an amount not ex-
ceeding the value so declared or released, and should
not be a violation of Section 10 of the Commerce Act,
in relation to discriminations. Plaintiffs contend that
as these Acts are now a part of the Interstate Com-
merce Law, they apply to and govern the limitations of
liability in the contracts of telegraph companies for
the transmission of interstate telegrams, especially
since the Interstate Commerce Commission has not
required telegraph companies to file schedules of rates
making charges dependent upon violation, and that,
therefore, the limitation herein relied on by defendant is
void. We think it is manifest from a reading of the
two Acts hereinabove mentioned (known as the First
and Second Cummins Amendments), that they have
no application to telegraph companies engaged in the
transmission of interstate messages. The *transmission*
of a message is wholly different from that of the trans-
portation of *tangible property*. [Primrose v. Western
Union Tel. Co., 154 U. S. 1, 14.] So different is it that

the terms of the two Acts cannot, in the very nature of things, apply to messages transmitted. And it is so held in Meriweather v. Western Union Tel. Co., 183 Ky. 710, 713, 714. Of course, if these amendments do not apply to telegraph companies or to their business of transmitting interstate messages, then whether the defendant filed schedules with the Interstate Commerce Commission or is required by it to do so, is wholly immaterial. It is not necessary for a telegraph company to do so. [Cultra v. Western Union Telegraph Co., 44 I. C. C. Rep. 670, 674.] This case is referred to with approval by the U. S. Supreme Court in the above case of Postal Telegraph Cable Co. v. Warren-Godwin Lumber, Co., 40 U. S. Sup. Ct. Reporter, 69 70. The record, however, shows that the telegraph company has filed its schedules with the Interstate Commerce Commission based on the various classifications into which the Federal Act permits telegraph companies to divide their service.

The judgment is affirmed. All concur.