WESTERN UNION TELEGRAPH CO. v. JACOBS. (No. 8238.)

(Court of Civil Appeals of Texas. Galveston. Nov. 1, 1922. Rehearing Denied Nov. 23, 1922.)

1. Commerce ⬤⟲28—Interstate messages subject to rates approved by Commission.

Interstate telegrams are sent subject to rates, rules, and regulations fixed or approved by the Interstate Commerce Commission.

2. Telegraphs and telephones ⬤⟲54(6)—Limitation of liability for unrepeated interstate message valid.

Limitation of liability for mistake in transmission of interstate message, sent at the lower rate for unrepeated message, to the amount received for sending it, being part of the tariff approved by the Interstate Commerce Commission, is valid.

Appeal from County Court, Grimes County; R. M. West, Judge.

Action by H. A. Jacobs against the Western Union Telegraph Company. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Albert Stone, of Brenham, for appellant.
Stoneham & Fahey, of Navasota, for appellee.

PLEASANTS, C. J. This suit, which originated in a justice court of Grimes county, was brought by the appellee to recover damages in the sum of $144 against appellant for its alleged negligent failure to correctly transmit a telegraphic message sent by appellee over appellant's telegraph lines from Navasota, Tex., to the brokerage firm of Atkinson & Co., at New Orleans, La. The message delivered to appellant for transmision was: "Buy one Jan. [Signed] Jacobs." As transmitted and delivered to Atkinson & Co. it read: "Sell one Jan." The telegram related to a transaction in the cotton market, and the change in the telegram caused an actual loss to appellee of $144. Defendant answered by general denial and general demurrer, and specially pleaded that the message was an interstate message, and governed by the rules and regulations prescribed by the Interstate Commerce Commission, which had fixed the rates and charges for such messages, and that the said message was an unrepeated message, and the sender of the same became bound by the clauses contained in the said message on the back thereof, limiting the liability of the defendant company to the amount paid for sending the message, or at the most to the sum of $50, at which amount the message in question had been valued. The trial in the court below without a jury resulted in a judgment in favor of appellee for the sum of $50.

The following undisputed facts are disclosed by the record: The telegram was sent as alleged by appellee on December 18, 1919, and was changed in transmission by the substitution of the word "sell" for "buy." The charge for sending the message was paid by Atkinson & Co. It was an unrepeated message, and the rate charged for its transmission was the regular rate for an unrepeated message fixed by the appellant and approved by the Interstate Commerce Commission. The message was sent on one of the regular sending blanks of appellant, and on the face of the blank there is the following printed agreement:

"Send the following telegram subject to the terms on the back hereof, which are hereby agreed to."

---

⬤⟲For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The terms contained on the back of the message are as follows:

"All telegrams taken by this company are subject to the following terms: To guard against mistakes or delays, the sender of a telegram should order it repeated, that is, telegraphed back to the originating office for comparison. For this one-half the unrepeated telegram rate is charged in addition. Unless otherwise indicated on its face, this is an unrepeated telegram and paid for as such, in consideration whereof it is agreed between the sender of the telegram and this company as follows:

"1. The company shall not be liable for mistakes or delays in the transmission or delivery, or for nondelivery of any unrepeated telegram beyond the amount received for sending the same; nor for mistakes or delays in the transmission or delivery or for nondelivery of any repeated telegram, beyond fifty times the sum received for sending the same, unless specially valued; nor in any case for delays arising from unavoidable interruption in the working of its lines, nor for errors in cipher or obscure telegrams.

"2. In any event the company shall not be liable for damages for any mistakes or delays in the transmission or delivery, or for nondelivery of this telegram, whether caused by the negligence of its servants or otherwise, beyond the sum of fifty dollars, at which amount this telegram is hereby valued, unless a greater value is stated in writing hereon at the time the telegram is offered to the company for transmission, and an additional sum paid or agreed to be paid based on such value equal to one-tenth of one per cent. thereof."

By and with the consent and approval of the Interstate Commerce Commission, the defendant Western Union Telegraph Company had filed tariffs and classifications covering the transmission of interstate telegraph messages, among others being the classification of messages into repeated and unrepeated messages, there being one charge or rate for the sending of unrepeated messages, and a different and higher charge for the sending of a repeated message, which classification was in effect at the date of the sending of the message involved in this suit. That no value was put on said telegram by the parties at the time of the sending of same, other than the valuation contained in the contract on the back of the message. This message or telegram was sent subject to the terms and conditions on the back thereof, above set out.

[1, 2] We agree with appellant that upon these facts it cannot be held liable to appellee in any amount exceeding the charge made for the transmission of the telegram, and as this charge was not paid by appellee he was not entitled to a judgment in any amount. It is now well settled law that all interstate telegraphic messages are sent subject to rates, rules, and regulations fixed or approved by the Interstate Commerce Commission, and that a rule or regulation restricting the telegraph company's liability for mistake or delay in the transmission or delivery of an unrepeated telegram to the charges paid for its transmission is not a contract exempting the company from liability for its negligence, but merely a reasonable condition fixing the charges for the service rendered in proportion to the responsibility required in its performance. W. U. Tel. Co. v. Brent & Bro., 191 Ky. 503, 230 S. W. 921; Brewer v. Postal Tel. Co., 204 Mo. App. 275, 223 S. W. 949; Primrose v. W. U. T. Co., 154 U. S. 1, 14 Sup. Ct. 1098, 38 L. Ed. 883; Postal Tel. Co. v. Warren-Godwin Lumber Co., 251 U. S. 27, 40 Sup. Ct. 69, 64 L. Ed. 118; W. U. Tel. Co. v. Esteve Bros. & Co., 256 U. S. 566, 41 Sup. Ct. 584, 65 L. Ed. 1094, decided June 1, 1921; W. U. Tel. Co. v. Southwick, 255 U. S. 585, 41 Sup. Ct. 446, 65 L. Ed. 788, reversing W. U. Tel. Co. v. Southwick (Tex. Civ. App.) 214 S. W. 987, decided March 21, 1921.

In Postal Telegraph Co. v. Warren-Godwin Lumber Co., 251 U. S. 27, 40 Sup. Ct. 69, 64 L. Ed. 118, Mr. Justice White says:

"In Primrose v. Western Union Telegraph Company, * * * the court passed upon the validity of a contract made by a telegraph company with the sender of a message by which, in case the message was missent, the liability of the company was limited to a refunding of the price paid for sending it, unless, as a means of guarding against mistake, the repeating of the message from the office to which it was directed to the office of origin was secured by the payment of an additional sum. It was held that such a contract was not one exempting the company from liability for its negligence, but was merely a reasonable condition appropriately adjusting the charge for the service rendered to the duty and responsibility exacted for its performance; such a contract was therefore decided to be valid and the right to recover for error in transmitting a message which was sent subject to it was accordingly limited."

In the case of Western Union Telegraph Company v. Southwick (Tex. Civ. App.) 214 S. W. 214, the same questions were raised as in this case, the Texas Court of Appeals holding that the clauses in the contract were invalid, which holding was reversed by the United States Supreme Court by a decision of the same case in 255 U. S. 585, 41 Sup. Ct. 446, 65 L. Ed. 788.

In Western Union Telegraph Co. v. Esteve Bros. & Co., 256 U. S. 566, 41 Sup. Ct. 584, 65 L. Ed. 1094, the court says:

"The question presented for our decision is whether since the amendment of June 18, 1910, to the Act to Regulate Commerce, the sender is, without assent in fact bound as a matter of law by the provision limiting liability, because it is a part of the lawfully established rate.

"The lawful rate having been established, the company was by provisions of section 3 of the Act to Regulate Commerce prohibited from granting to any one an undue preference or advantage over the public generally. For as stated in Postal Tel. Cable Co. v. Warren-Godwin, the 'act of 1910 was designed to and did

subject such companies as to their interstate business to the rule of equality and uniformity of rate.' If the general public upon paying the rate for an unrepeated message accepted substantially the risk of error involved in transmitting the message, the company could not, without granting an undue preference or advantage extend different treatment to the plaintiff here. The limitation of liability was an inherent part of the rate. The company could no more depart from it than it could depart from the service rendered.

"The act of 1910 introduced a new principle into the legal relations of the telegraph companies with their patrons which dominated and modified the principles previously governing them. Before the act the companies had a common-law liability from which they might or might not extricate themselves according to views of policy prevailing in the several states. Thereafter, for all messages sent in interstate or foreign commerce, the outstanding consideration became that of uniformity and equality of rates. Uniformity demanded that the rate represent the whole duty and the whole liability of the company. It could not be varied by agreement; still less could it be varied by lack of agreement. The rate became, not, as before, a matter of contract by which a legal liability could be modified, but a matter of law by which a uniform liability was imposed. * * * So here the limitation of liability attached to the unrepeated cable rate is binding upon all who send messages to or from foreign countries until it is set aside as unreasonable by the Commission."

The clauses upon the back of the telegram in the cases above cited, limiting the liability of the company, are in all essentials identical with the clauses on the back of the telegram in this case, We think the authorities above cited are conclusive against appellee's right to recover in this suit.

This conclusion requires that the judgment of the court below be reversed, and judgment here rendered for appellant; and it has been so ordered.

Reversed and rendered.