POSTAL TELEGRAPH-CABLE CO. *v.* EUBANKS.

[83 South. 678, In Banc. No. 20765.]

1. COMMERCE. *Interstate telegrams governed as to punitive damages by federal law.*

A telegram offered for transmission from a point in this state to a point in another state was an interstate message and governed as to the recovery of punitive damages by federal law.

2. TELEGRAPHS AND TELEPHONES. *Punitive damages not recoverable for agent's wilful refusal to accept message unless wrong was authorized or ratified.*

Under the federal rule no recovery of punitive damages can be had on account of the wilful conduct of the servant, unless the commission of the wrong was authorized by the master, participated in by him, or ratified by him.

2. Commerce. *Act of telegraph company's agent in refusing to take interstate message. An interstate transaction governed by federal law.*

Where plaintiff went to defendant telegraph company's agent and stated that he wanted the agent to deliver a message to a point in another state, which the agent refused to do, the act of the agent was not wholly disconnected with interstate commerce, but was so intimately related to the proposed message, interstate in character, that his refusal to receive it was the act of an interstate agent in violation of a federal duty with reference to an interstate matter, and therefore controlled by the federal law as to the telegraph company's liability for punitive damages.

Appeal from the circuit court of Quitman county. Hon. W. A. Alcorn, Jr., Judge.

Suit by Sam Eubanks against the Postal Telegraph Cable Company. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*J. N. Flowers, E. B. Cooper* and *H. C. Holden,* for appellant.

The question presented by the court is within a narrow compass. If it was the duty of appellant under the Federal Law, the measure of damages and their character are to be determined by that law.

Prior to June 18, 1910, telegraph companies were not as to interstate commerce common carriers. But on June 18, 1910, Congress enacted that they should be common carriers within the act to regulate commerce. They are, therefore, both common carriers under the laws of Mississippi and the United States, and as such they are under the duties of such carrier. And one of the primary duties of a carrier by telegraph is to accept a lawful message for transmission.

The suit in the present case is a suit brought because of a failure to perform that duty. The message offered for transmission was a message to be moved in interstate commerce. Its origin was Mississippi and its destination Tennessee. There can be, and there is, no dispute as to this. The question is to what law shall we attribute this duty, the national or the state?

Suppose appellee tendered appellant a message to be moved in interstate commerce written upon paper other than the form which is supplied for that purpose and required that it be sent as an unrepeated message. We shall suppose the proper tender of the message fee. Would the appellee in that instance be in a position to bring this suit? Clearly not because we have a right to require him to enter into a certain contract in a message of that character limiting our responsibility. That right is derived from a Federal Statute, but the answer, it will be said, to this is that it is merely a right to refuse. Merely a defense to be offered. But if the duty to receive a message for transmission is derived solely from the state, this is an infringement upon the right of the state to enforce the duty of the telegraph company.

The situation detailed above is not a parallel to this case, but by showing its similarity to a case decided by the supreme court of the United States we hope to show that it contains in its last analysis the principle decisive of the case at bar. The court is familiar with the case as it is cited in our original brief. It is the case of *Southern Railway Company* v. *Reid,* 56 L. Ed., 257, 222 U. S. 424.

That was a suit brought to recover penalties for a refusal to receive an interstate shipment of freight. The statute of North Carolina provided a penalty for such refusal. There was a judgment for the shipper and against the railroad company. The railroad defended on the ground that it had no through rate and

by the Interstate Commerce Act it could not accept until its rate was filed.

The supreme court of North Carolina in upholding the judgment of the lower court against the railroad company said: "The statutory enforcement under penalty of a common-law duty to accept freight whenever tendered is not within the scope of any act of Congress.'

To hold that the duty breached in the case at bar is one rising from our constitution, statutes, or the common law as our courts see it, would lead to the same conclusion as before set out. But the supreme court of the United States holds that because Congress has said the freight may not be received until the rate has been filed and approved, that this duty to receive cannot be enforced by the state.

Why could not the supreme court of the United States have said that the duty to receive was still uncontrolled by Congress, rested in common law but that the provision afforded only a defense in that particular case; and that in all other cases the state court might enforce this duty? That would be the logic of the situation if the answer supposed in the case of a telegraph company above is accepted as the solution of the question.

The principle to be deduced from the Reid Case is that where under the federal statutes any right is given which would warrant the refusal of the enforcement of the common-law obligations of a carrier that phase of a carrier's business has been removed from state control and the operation of state laws.

If Congress has given us in legislation a right to refuse to receive a message, has not Congress legislated upon our duty to receive? To state the question is to answer it. And this court needs no authority to convince it that when Congress takes possession of a subject within a proper sphere the rights and liabilities

are to be determined by Federal Law. This court so announced the rule in the case of *Western Union* v. *Norman,* not yet reported. But it may be said that the Reid case was a statute and this case is not, but this court is penalizing us for not receiving a message by its own rule for punitive damages. There can be no difference in result because of a difference in the repository of the law, but there is still another guide post. The duty to receive certainly arises when Congress declared us a common carrier. The duty already existed under our law. Why should this court say our duty to receive was under the state law? Why shouldn't it say with as much force that it arose under the Federal Law? When the Federal Employer's Liability Act was passed the supreme court of the United States held that a laborer on a track devoted to both inter- and intrastate commerce was engaged in interstate commerce. Why not the same rule here?

And then again the duty to receive is no greater than the duty to transmit, or transport, or to deliver. There is nothing specific in the Interstate Commerce Act as to delivery, but it has been held that for delay in delivery the rights are to be controlled by federal law. *Southern Express Company* v. *Byers,* 240 U. S. 612, 60 L. Ed. 825. The refusal to receive falls within the same category.

So we submit that the rule of the federal courts as to punitive damages should have been applied. It was not done and the cause should be reversed. Since the writing of the foregoing we have received a copy of the opinion of the supreme court of the United States in the case of *Western Union Telegraph Company* v. *Peter Boegli.* We attach the only copy available to this brief for perusal by the court.

This case comes from the supreme court of Indiana and is found in 115 N. E. 773. The suit was brought to recover a penalty fixed by a statute for failure to

deliver messages in the order in which they were received. The supreme court of Indiana, held that there was nothing in the Act of June 18, 1910, covering the specific duty of delivery and consequently the statute of that state as applied to the delivery of the telegrams was still operative.

We call to the court's attention also the case of *Southern Railway Company* v. *Prescott,* 240 U. S. 632. This was a case where freight was held as a warehouseman. The supreme court of South Carolina applied its own law in determining the liability of the warehouseman. The supreme court of the United States held this to be error as it was governed by national law. The interstate shipment had ceased and the freight was in the hands of the company as a warehouseman.

*W. M. Donaldson,* for appellee.

The argument of counsel in the brief of appellant is all directed to the issue as to whether or not the refusal of the agent to receive and transmit the message was willful. They admit that if such refusal was wilful, appellee had the right to recover. The jury found as a fact that the act was willful.

The court will not disturb a finding of facts by the jury unless it is manifestly wrong to such an extent as to have the appearance of prejudice. The testimony upon which the jury acted in this instance in finding this fact was directly at variance. The jury had a right to believe Graves alone, or all the other witnesses as opposed to him. They manifestly believed Eubanks and his witnesses as against Graves, the agent of appellant, and found as a fact that his refusal was willful. This they had a right to do.

If the jury found the refusal to receive and transmit the msesage to be wilful, then they had a right to find

damages in favor of appellee, as was charged in the instructions, and as seems to be admitted by appellant's brief. It has been so decided by this court. *Johnson* v. *Western Union Telegraph Co.,* 115 Miss. 884, 76 So. 738.

The instant case comes squarely within the lines laid down in the Johnson case. It is argued that Graves did not refuse to send the message but only postponed it. That is Graves' version. Appellee's version, supported by the testimony of Jabo Johnson, Rufus Gordon and Mrs. Ezell, the telephone operator, is not only a refusal, but a willful refusal. The jury believed old man Eubanks, as corroborated by the other testimony, and found the fact. The court instructed them that if they found this to be a fact they could find punitive damage. They also did this. They found the fact which this court will not disturb, and applied the law as given them by the court, and which law this court has approved in the Johnson case cited above.

That seems to us to be all there is to argue.

Holden, J., delivered the opinion of the court.

The appellant telegraph company has an office in Marks, Miss., where its agent was also the agent for the railroad company. The appellee, Sam Eubanks, desired to send a message to a relative in Memphis, Tenn., with reference to the death of his sister. He went to the office at the railroad station, and, finding no one there, went out upon the cotton platform near by, where he found the agent busy loading cotton, and said to the agent, "I want you to deliver a message to Memphis for me on the case of my dead sister." The agent, who was a Mr. Graves, said in reply to appellee, "I be damned if I stop loading cotton and send any message," whereupon appellee left the station for the pur-

pose of sending the message by telephone. Suit was filed against the telegraph company, which resulted in a recovery of one hundred and twenty-five dollars as punitive damages for the willful and wanton failure of the telegraph company to receive and send the message offered by the appellee. No actual damages were shown.

This appeal by the telegraph company presents several questions for our decision, one of which is whether or not the conduct of the agent in failing and refusing to accept the message was such as to warrant recover of punitive damages. It is unnecessary. however, to decide this point, because a decision of another important question will end the case, and that is whether or not the conduct of the agent was in interstate commerce, and governed by the federal law with reference to the recovery of punitive damages.

It will be observed that the message offered for transmission was from a point within this state to a point within the state of Tennessee; therefore it was an interstate message. It being an interstate message, the federal law as to the recovery of punitive damages must ncessarily govern. *Postal Telegraph Cable Co. v. Warren-Godwin Lumber Co.*, 251 U. S. ——, 40 Sup. Ct. 69, L. Ed. —— (Dec. 8, 1919).

Under the federal rule no recovery of punitive damages can be had on account of the wilful conduct of the servant, unless the commission of the wrong was authorized by the master, participated in by him or ratified by him. There is no proof in this record that the commission of the wrong in this case was either authorized, participated in, or ratified by the master; consequently there can be no recovery of punitive damages.

To be more specific on another phase of the question: Was the wrong complained of committed in interstate commerce? In other words, was the wrongful act of the agent committed before the telegram was received into

the channel of interstate commerce, and before it had become interstate in character? If the act of the agent was wholly disconnected with interstate commerce, then, of course, liability could be predicated upon the state law which allows punitive damages without the sanction of the master. We think the transaction between appellee and the telegraph agent was in interstate commerce, because the message offered, the subject-matter about which the alleged wrong was committed, was an interstate message; and, while it had not been actually accepted by the agent for transmission, still his refusal to receive it was the act of an interstate agent in violation of a federal duty, with reference to an interstate matter, thus making it interstate in character; and to allow the infliction of punitive damages for his act would be in conflict with the federal rule, which allows only actual damages in such cases unless the act is authorized or ratified by the master. Since punitive damages are not here recoverable under the federal law, and no actual damages were proved, it follows that no recovery can be had in this case.

It has been held by the United States supreme court that penalities under a state statute for a refusal to receive interstate shipments of freight could not be recovered, because such right would be in conflict with the federal rule under the Commerce Act (U. S. Comp. St., section 8563 et seq.), *So. Ry. Co.* v. *Reid,* 222 U. S. 424, 32 Sup. Ct. 140, 56 L. Ed. 257; *W. U. Tel. Co.* v. *Peter Boegli,* 251 U. S. ——, 40 Sup. Ct. 167, 64 L. Ed. —— (Jan. 12, 1920); *So. Ry. Co.* v. *Prescott,* 240 U. S. 632, 36 Sup. Ct. 469, 60 L. Ed. 836.

The judgment of the lower court accordingly is reversed, and judgment here for appellant.

*Reversed and judgment here.*