ELI C. BURKE, APPELLANT, V. WESTERN UNION TELEGRAPH
COMPANY, INC., APPELLEE.

291 N. W. 555

FILED APRIL 12, 1940.　No. 30815.

Charles E. Foster, Henry G. Peterson and Foster & Yates, for appellant.

Francis.R. Stark and Ellick, Fitzgerald & Smith, contra.

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

CARTER, J.

This is an action to recover damages for the nondelivery of a telegram sent to the plaintiff announcing the death of his father and requesting his attendance at the funeral. At the close of plaintiff's evidence the trial court directed a verdict against the plaintiff and dismissed the action. Plaintiff appeals.

The record discloses that on July 22, 1938, Gladys Duesler, a sister of the plaintiff residing at Oklahoma City, Oklahoma, filed a telegram with the defendant company at its

office in Oklahoma City, which in substance said: "Father died today. Come at once." The telegram was never delivered and plaintiff was not informed of his father's death until July 30, 1938, after the funeral had been held. Plaintiff alleges and offered evidence to prove that the negligence of the defendant in failing to deliver the message caused a severe shock to his nervous system and great mental pain and anguish for which he asked for damages. It is the contention of the defendant that the case is controlled by federal laws which preclude a recovery for mental anguish or for physical suffering growing out of mental anguish. The trial court adopted this view and directed a verdict against plaintiff.

It is not disputed that the telegram was filed with the defendant company in Oklahoma City, Oklahoma, and not delivered to the plaintiff in Omaha, Nebraska, as directed. That it was an interstate message cannot be questioned. *Western Union Telegraph Co. v. Czizek*, 264 U. S. 281, 44 S. Ct. 328, 68 L. Ed. 682; *Postal Telegraph-Cable Co. v. Eubanks*, 121 Miss. 530, 83 So. 678; *Western Union Telegraph Co. v. King*, 188 Ga. 95, 2 S. E. (2d) 909.

Congress has the power under the Constitution of the United States to regulate commerce among the several states. U. S. Const. art. I, sec. 8. In 1910 congress exercised its constitutional power by passing an act regulating interstate communications by telegraph. 36 U. S. St. at Large, 539. The supreme court of the United States subsequently construed this act in *Postal Telegraph-Cable Co. v. Warren-Godwin Lumber Co.*, 251 U. S. 27, 40 S. Ct. 69, 64 L. Ed. 118, and *Western Union Telegraph Co. v. Esteve Bros. & Co.*, 256 U. S. 566, 41 S. Ct. 584, 65 L. Ed. 1094, and determined that an action for damages for failure to deliver an interstate telegram was governed exclusively by the federal law. This holding was recognized and followed by this court in *Dunning v. Western Union Telegraph Co.*, 108 Neb. 422, 187 N. W. 890, wherein we said: "The federal government being supreme in the control of interstate commerce, as held by the supreme court of the United States, the state

cannot of course interfere with that control. And it may be added that the act is so far-reaching that the receiver of an interstate telegram, as well as the sender, comes within its meaning."

Congress has, under the Communications Act of 1934 (48 U. S. St. at Large, 1064), continued to occupy the field of interstate business of telegraph companies to such an extent that state action is excluded unless there be an express exception. *Western Union Telegraph Co. v. Boegli*, 251 U. S. 315, 40 S. Ct. 167, 64 L. Ed. 281; *Western Union Telegraph Co. v. Priester*, 276 U. S. 252, 48 S. Ct. 234, 72 L. Ed. 555; *Western Union Telegraph Co. v. King*, 188 Ga. 95, 2 S. E. (2d) 909.

When the supreme court of the United States has construed an act of congress, the interpretation made by that court controls the action of the state courts. *Dunning v. Western Union Telegraph Co.*, 108 Neb. 422, 187 N. W. 890.

The purpose of the congress in occupying the field of the interstate business of telegraph companies is well expressed in *Western Union Telegraph Co. v. Esteve Bros. & Co.*, 256 U. S. 566, 41 S. Ct. 584, 65 L. Ed. 1094, wherein the court said: "Thereafter, for all messages sent in interstate or foreign commerce, the outstanding consideration became that of uniformity and equality of rates. Uniformity demanded that the rate represent the whole duty and the whole liability of the company. It could not be varied by agreement; still less could it be varied by lack of agreement. The rate became, not as before a matter of contract by which a legal liability could be modified, but a matter of law by which a uniform liability was imposed." The supreme court of the United States expressed the same view in *Postal Telegraph-Cable Co. v. Warren-Godwin Lumber Co.*, 251 U. S. 27, 40 S. Ct. 69, 64 L. Ed. 118, wherein it was said: "The act of 1910 was designed to and did subject such companies as to their interstate business to the rule of equality and uniformity of rates which it was manifestly the dominant purpose of the act to regulate commerce to establish, a purpose which would be wholly destroyed if, as held by

the court below, the validity of contracts made by telegraph companies as to their interstate commerce business continued to be subjected to the control of divergent and it may be conflicting local laws." See, also, *Western Union Telegraph Co. v. Priester*, 276 U. S. 252, 48 S. Ct. 234, 72 L. Ed. 555. We therefore conclude that the instant case comes within the field occupied by the congress of the United States and that a proper conclusion can be reached only by the application of rules of law announced by the federal courts.

The rule appears to be well settled in the federal courts that pain and suffering and mental anguish are too vague for legal redress where no injury is done to person, property, health or reputation. *Southern Express Co. v. Byers*, 240 U. S. 612, 36 S. Ct. 410, 60 L. Ed. 825; *Western Union Telegraph Co. v. Speight*, 254 U. S. 17, 41 S. Ct. 11, 65 L. Ed. 104; *Western Union Telegraph Co. v. Lee*, 174 Ky. 210, 192 S. W. 70. In the latter case, the court said: "But before Congress took control of the subject of interstate telegrams, state laws could incidentally affect them; since the act of 1910, they cannot. The whole subject of interstate telegrams, including the terms of the contract and the character of the recovery, are now controlled by the federal law; and, as above shown, Lee's telegram was an interstate telegram. It follows, therefore, that the circuit court erred in sustaining the demurrers to the answer which sought to limit the company's liability under the contract, and in permitting a recovery for mental anguish."

Other cases in point are *Ey v. Western Union Telegraph & Cable Co.*, 298 Fed. 357; *Jones v. Western Union Telegraph Co.*, 233 Fed. 301; *Mees v. Western Union Telegraph Co.*, 55 Fed. (2d) 691.

We conclude therefore that a recovery cannot be had for mental pain and anguish under the applicable rules announced by the federal courts.

The trial court correctly directed a verdict for the defendant and dismissed the action.

AFFIRMED.