# POSTAL TELEGRAPH-CABLE COMPANY *v.* WARREN-GODWIN LUMBER COMPANY.

CERTIORARI TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 91.  Argued November 17, 1919.—Decided December 8, 1919.

Under the Act of June 18, 1910, c. 309, 36 Stat. 539, 545, a telegraph company providing one rate for unrepeated interstate messages and another, higher rate for those repeated, may stipulate for a reasonable limitation of its responsibility when the lower rate is paid; and the validity of such contracts is not determinable by state laws. P. 30.

116 Mississippi, 660, reversed.

THE case is stated in the opinion.

*Mr. Ellis B. Cooper*, with whom *Mr. J. T. Brown* and *Mr. J. N. Flowers* were on the brief, for petitioner.

*Mr. William D. Anderson*, for respondent, submitted.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

In *Primrose* v. *Western Union Telegraph Co.*, 154 U. S. 1, the court passed upon the validity of a contract made by a telegraph company with the sender of a message by which, in case the message was missent, the liability of the company was limited to a refunding of the price paid for sending it, unless, as a means of guarding against mistake, the repeating of the message from the office to which it was directed to the office of origin was secured by the payment of an additional sum.  It was held that such a contract was not one exempting the company from

liability for its negligence, but was merely a reasonable condition appropriately adjusting the charge for the service rendered to the duty and responsibility exacted for its performance. Such a contract was therefore decided to be valid and the right to recover for error in transmitting a message which was sent subject to it was accordingly limited.

In *Western Union Telegraph Co.* v. *Showers*, 112 Mississippi, 411, the Supreme Court of that State was called upon to consider the validity of a contract by a telegraph company limiting its responsibility for missending an unrepeated message essentially like the contract which was considered and upheld in the *Primrose Case*. The court decided that as the Act of Congress of June 18, 1910, c. 309, 36 Stat. 539, 545, had operated to exert the power of Congress over telegraph companies as to their interstate business and contracts, Congress has taken possession of the field and thus excluded state legislation and hence such a contract was valid and enforcible in accordance with the rule laid down in the *Primrose Case*. In holding this, however, the court pointed out that but for the act of Congress a different rule would apply, as under the state law such a contract was invalid because it was a stipulation by a carrier limiting its liability for its negligence.

In *Dickerson* v. *Western Union Telegraph Co.*, 114 Mississippi, 115, the validity of a like contract by a telegraph company for the sending of an unrepeated message once again arose for consideration. In passing upon it the court declared that the ruling previously made in the *Showers Case*, as to the operation of the Act of Congress of 1910, was erroneous. Coming therefore to reconsider that subject, it was held that the Act of Congress of 1910 had not extended the power of Congress over the rates of telegraph companies for interstate business and the contracts made by them as to such subject, and hence the

*Showers Case*, in so far as it held to the contrary, was overruled. Thus removing the contract from the operation of the national law and bringing it under the state law, the court held that the contract was void and not susceptible of being enforced because it was a mere contract exempting the telegraph company from the consequences of its negligence.

The case before us, involving the extent of the liability of the Telegraph Company for an unrepeated interstate message governed by a contract like those considered in the previous cases, was decided by a state circuit court after the decision in the *Showers Case* and before the overruling of that case by the *Dickerson Case*. Presumably therefore the court, because of the *Showers* decision, upheld the validity of the contract and accordingly limited the recovery. The appeal which took the case to the court below, however, was there heard after the decision in the *Dickerson Case*. In view of that situation the court below in disposing of the case expressly declared that the only issue which was open was the correctness of the ruling in the *Dickerson Case*, limiting the operation and effect of the Act of Congress of June 18, 1910. Disposing of that issue, the ruling in the *Dickerson Case* was reiterated and the contract, although it concerned the transmission of an interstate message, was declared not affected by the act of Congress and to be solely controlled by the state law and to be therefore void. That subject presents then the only federal question, and indeed the only question in the case.

For the sake of brevity, we do not stop to review the cases which perturbed the mind of the court below in the *Dickerson Case* as to the correctness of its ruling in the *Showers Case* (*Pennsylvania R. R. Co.* v. *Hughes*, 191 U. S. 477; *Western Union Telegraph Co.* v. *Crovo*, 220 U. S. 364; *Adams Express Co.* v. *Croninger*, 226 U. S. 491; *Western Union Telegraph Co.* v. *Brown*, 234 U. S. 542), but content

ourselves with saying that we are of opinion that the effect which was given to them was a mistaken one. We come at once therefore to state briefly the reasons why we conclude that the court below mistakenly limited the Act of Congress of 1910 and why therefore its judgment was erroneous.

In the first place, as it is apparent on the face of the Act of 1910 that it was intended to control telegraph companies by the Act to Regulate Commerce, we think it clear that the Act of 1910 was designed to and did subject such companies as to their interstate business to the rule of equality and uniformity of rates which it was manifestly the dominant purpose of the Act to Regulate Commerce to establish, a purpose which would be wholly destroyed if, as held by the court below, the validity of contracts made by telegraph companies as to their interstate commerce business continued to be subjected to the control of divergent and it may be conflicting local laws.

In the second place, as in terms the act empowered telegraph companies to establish reasonable rates, subject to the control which the Act to Regulate Commerce exerted, it follows that the power thus given, limited of course by such control, carried with it the primary authority to provide a rate for unrepeated telegrams and the right to fix a reasonable limitation of responsibility where such rate was charged, since, as pointed out in the *Primrose Case*, the right to contract on such subject was embraced within the grant of the primary rate-making power.

In the third place, as the act expressly provided that the telegraph, telephone or cable messages to which it related may be "classified into day, night, repeated, unrepeated, letter, commercial, press, Government, and such other classes as are just and reasonable, and different rates may be charged for the different classes of messages," it would seem unmistakably to draw under the federal

control the very power which the construction given below to the act necessarily excluded from such control. Indeed, the conclusive force of this view is made additionally cogent when it is considered that as pointed out by the Interstate Commerce Commission, (*Clay County Produce Co.* v. *Western Union Telegraph Co.*, 44 I. C. C. 670,) from the very inception of the telegraph business, or at least for a period of forty years before 1910, the unrepeated message was one sent under a limited rate and subject to a limited responsibility of the character of the one here in contest.

But we need pursue the subject no further, since, if not technically authoritatively controlled, it is in reason persuasively settled by the decision of the Interstate Commerce Commission in dealing in the case above cited with the very question here under consideration as the result of the power conferred by the Act of Congress of 1910; by the careful opinion of the Circuit Court of Appeals of the Eighth Circuit dealing with the same subject (*Gardner* v. *Western Union Telegraph Co.*, 231 Fed. Rep. 405); and by the numerous and conclusive opinions of state courts of last resort which in considering the Act of 1910 from various points of view reached the conclusion that that act was an exertion by Congress of its authority to bring under federal control the interstate business of telegraph companies and therefore was an occupation of the field by Congress which excluded state action. *Western Union Tel. Co.* v. *Bank of Spencer*, 53 Oklahoma, 398; *Haskell Implement Co.* v. *Postal Tel.-Cable Co.*, 114 Maine, 277; *Western Union Tel. Co.* v. *Bilisoly*, 116 Virginia, 562; *Bailey* v. *Western Union Tel. Co.*, 97 Kansas, 619; *Durre* v. *Western Union Tel. Co.*, 165 Wisconsin, 190; *Western Union Tel. Co.* v. *Schade*, 137 Tennessee, 214; *Meadows* v. *Postal Tel. & Cable Co.*, 173 N. Car. 240; *Norris* v. *Western Union Tel. Co.*, 174 N. Car. 92; *Bateman* v. *Western Union Tel. Co.*, 174 N. Car. 97; *Western Union Tel. Co.* v. *Lee*, 174

Kentucky, 210; *Western Union Tel. Co.* v. *Foster,* 224 Massachusetts, 365; *Western Union Tel. Co.* v. *Hawkins,* 14 Ala. App. 295.

It is indeed true that several state courts of last resort have expressed conclusions concerning the act of Congress applied by the court below in this case. But we do not stop to review or refer to them as we are of opinion that the error in the reasoning upon which they proceed is pointed out by what we have said and by the authorities to which we have just referred.

It follows that the judgment below was erroneous and it must be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*And it is so ordered.*

MR. JUSTICE PITNEY dissents.