**Leslie J. BAUCHELLE, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**AT & T Corp., Defendant.**

**No. CIV. 97-1710 MTB.**

United States District Court,
D. New Jersey.

Nov. 17, 1997.

Allyn Zissel Lite of Goldstein, Lite & De-Palma, P.C., Newark, NJ, for Plaintiff.

Terry L. Trantina, Ravin, Sarasohn, Cook, Baumgarden, Fisch & Rosen, P.C., Roseland, NJ, for Defendant.

## OPINION

CHESLER, United States Magistrate Judge.

### I. Introduction

This matter comes before the Court on the application of Plaintiff Leslie J. Bauchelle for remand of this action to the New Jersey Superior Court. The motion was referred to the undersigned by the Honorable Maryanne Trump Barry, U.S.D.J. Oral argument was heard on August 7, 1997. For the reasons stated below, Plaintiff's motion for remand is granted.

### II. Background

Plaintiff Leslie J. Bauchelle, on behalf of herself and all others similarly situated, filed this class action Complaint against Defendant AT & T Corporation on February 18, 1997 in the Superior Court of New Jersey, Bergen County. Plaintiff and the stated Class represent persons who:

> since the initiation of AT & T's 10–cents–per–minute long-distance telephone service option for residential customers, contacted AT & T and asked for or about AT & T's least expensive residential long-distance telephone service option, were told that an option other than AT & T's 10–cents–per–minute option was the least expensive option offered to residential customers, and subsequently signed up for an AT & T residential long-distance telephone service option other than the 10–cents–per–minute option.

(Compl. at ¶5.) The class excludes Defendant and employees of Defendant. (*Id.*)

Defendant provides interstate communications services including long-distance telephone services and is a common carrier subject to the Federal Communications Act ("FCA" or "Act"), 47 U.S.C. § 151 *et seq.* Section 203(a) of the Act requires carriers to file tariffs, which show the carriers' charges for service, and keep such tariffs open for public inspection in the manner directed by the Federal Communications Commission ("FCC"). Section 203(c) prohibits carriers from charging any rates other than those set forth in the filed tariff for the particular service to which the customer subscribed. Defendant's "One Rate" and "One Rate Plus" residential service plans were both federally tariffed service offerings properly filed with the FCC and were in effect as of the date the above-captioned action was filed in state court.

Plaintiff alleges that she contacted Defendant in December 1996 to inquire about its least expensive telephone service option for

residential customers. At the time, Defendant offered both the "One Rate" and "One Rate Plus" plans. Under the "One Rate" plan, Defendant offered residential long-distance telephone service consumers a 15–cents–a–minute option for calls placed at any time and on any day. Under the "One Rate Plus" plan, however, Defendant offered a 10–cents–a–minute option for calls placed at any time and on any day for a $4.95–per–month fee. Plaintiff was told only about the "One Rate" plan and contends that, by company-wide policy, Defendant's representatives "regularly and systematically falsely tell the customers (or potential customers) that AT & T's least expensive option is the 15–cents–per–minute option." (Plaintiff's Memorandum of Law In Support of Motion to Remand, p. 4 [hereinafter "P.Mem."] ). In the complaint, Plaintiff alleges violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–1 *et seq.*, fraud, and negligent misrepresentation. The complaint expressly disavows any challenge to the service rates that Defendant may charge.

Defendant removed this matter to federal court on April 4, 1997, contending that this court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction). First, Defendant asserts that Plaintiff's claims for fraud and negligent misrepresentation arise under federal common law. Second, Defendant maintains that Plaintiff's statutory claim requires the construction of federal law and depends on the resolution of substantial federal questions. Third, Defendant contends that Plaintiff's claims are completely preempted by the Federal Communications Act.

Plaintiff filed a motion to remand this matter to state court on the ground that the Complaint arises under state law and that there are no federal questions to be addressed. In determining whether remand is proper, this Court must address each of Defendant's asserted bases for removal. The Court finds that Plaintiff's claims do not arise under federal law nor are they completely preempted by the FCA. Therefore, for the reasons discussed below, the motion to remand the action to the New Jersey Superior Court must be granted.

## III. Discussion

Defendant removed this action to federal court contending that Plaintiff's statutory claim requires the construction of federal law, that Plaintiff's common law claims arise under federal common law, and that Plaintiff's claims are completely preempted by the FCA. The general federal removal statute, 28 U.S.C. § 1441, allows removal by defendants of any state court action "of which the district courts of the United States have original jurisdiction." Where, as here, the removing party does not allege diversity jurisdiction, this Court's original jurisdiction must be based upon an action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case arises under federal law if the plaintiff's cause of action was vacated by federal law or if a federal law, which creates a cause of action, is an essential component of the plaintiff's state law claim. "Federal law" includes federal common law. *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972). The removing defendant bears the burden of proving that the Court has subject matter jurisdiction. *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir.1990).

### A. The Well–Pleaded Complaint Rule

It is well settled that federal question jurisdiction is governed by the "well-pleaded complaint rule." This rule provides that federal subject matter jurisdiction exists only when a federal question is pleaded on the face of a properly pleaded complaint. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987). As a result, a plaintiff—as master of the complaint—"may avoid federal jurisdiction by exclusive reliance on state law." *Id.* In addition, a defendant cannot remove a case "on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue" since such a defense does not appear on the face of a properly pleaded complaint. *Id.* at 393, 107 S.Ct. at 2430.

Here, each of Plaintiff's specifically alleged causes of action—violations of the New Jersey Consumer Fraud Act, fraud, and negligent misrepresentation—on its face is a state law claim.

### 1. Federal Law As a Necessary Element of Plaintiff's State Law Claims

■ If a disputed question of federal law exists as part of Plaintiff's state. law cause of action, federal question jurisdiction might still be found. In such a circumstance, the existence . of a "substantial, disputed question of federal law" is a threshold issue to support federal question jurisdiction. *United Jersey Banks v. Parell*, 783 F.2d 360, 366 (3d Cir.1986). A federal question is substantial when the federal issue is decisive because vindication of rights depends on construction of federal law. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983). Jurisdiction exists "only if that question also 'is a *necessary element* of one of the well-pleaded state claims.'" *Parell*, 783 F.2d at 366 (emphasis added).[1] A substantial disputed federal question, however, is insufficient by itself to confer jurisdiction. Thus, where Plaintiff's causes of action are created by state law, and no disputed question of federal law is a necessary element of one of those state law claims, there is no federal jurisdiction over the matter.

■ Defendant contends that all of Plaintiff's claims require the construction of a substantial disputed issue of federal law. Defendant characterizes Plaintiff's complaint as one which alleges that Defendant induced Plaintiff to sign up for the "One Rate" plan, rather than the "One Rate Plus" plan, by misrepresenting that the "One Rate" plan was the "least expensive." Should Plaintiff prevail, therefore, any damage calculation would compute the difference between the two rates filed in accordance with 47 U.S.C. § 203. Defendant relies on this indirect reference to the federal statute as a basis for conferring federal question jurisdiction over the complaint since Plaintiff "would have no

right to relief . . . were it not for the fact that AT & T had filed with the FCC the 'One Rate Plus' plan." (Defendant AT & T Corp.'s Memorandum of Law In Opposition to Plaintiff's Motion to Remand, p. 17 [hereinafter D.Mem.] ).

Defendant's argument fails in two respects. First, there is no *disputed* issue of federal law. It is not contested that, if Plaintiff prevails, damages would be the difference between the two filed rates. In addition, there is no dispute over the rates charged by Defendant: Plaintiff explicitly did not challenge the rates under the "One Rate" and "One Rate Plus" plans. *See* Compl. ¶ 20 ("This action expressly does not challenge AT & T's rates nor the reasonableness of those rates charged to AT & T's residential long-distance telephone service customers.") Accordingly, the indirect reference to federal law through the computation of damages does not create a "substantial, disputed question of federal law" and therefore is inadequate to confer subject matter jurisdiction on this Court.

Second, Defendant's contention that Plaintiff's right to relief arises from the properly filed tariffs is insufficient for the Court to find federal question jurisdiction. The analogous case of *Gully v. First Nat'l Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), is instructive. In *Gully*, the Mississippi state tax collector sued to collect taxes from a national bank. Because national banks are immune from state taxation except to the extent that Congress has allowed by statute, the lower courts held that the case was properly removed from state court. The lower courts reasoned that the power to tax national banks has its origins in a federal statute and that by "necessary implication a plaintiff counts upon the statute in suing for the tax." The Supreme Court rejected this analysis and found federal question jurisdiction to be lacking. 299 U.S. at 116, 57 S.Ct. at 99. The Court stated:

> That there is a federal law permitting such taxation does not change the basis of the suit, which is still the statute of the state,

---

1. In addition, the exercise of federal question jurisdiction requires that the federal law itself create a cause of action. *See Merrell Dow Phar-*

*maceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

though the federal law is evidence to prove the statute valid.

The argument for the respondent [the defendant Bank] proceeds on the assumption that, because permission at times is preliminary to action, the two are to be classed as one. But the assumption will not stand.... The *federal nature* of the right to be established is decisive—not the source of the authority to establish it. Here the right to be established is one created by the state. If that is so, it is unimportant that federal consent is the source of state authority....

*Id.* at 115–16, 57 S.Ct. at 98–99 (internal citations and quotations omitted).

Likewise, in this case, that a federal statute permits Defendant to charge the rates filed in the "One Rate" and "One Rate Plus" tariffs does not change the bases of the lawsuit, which are state common law and a state statute. Although such authorization does grant Plaintiff the right to subscribe to either of the calling plans—as the statute in *Gully* allowed the plaintiff to collect taxes—such permission should not be conflated with Defendant's obligations, pursuant to state law, to truthfully advertise and market its calling plans. The rights asserted by Plaintiff, therefore, are not federal in nature. Plaintiff pleads state law claims only, and such claims are not dependent on any necessary element of federal law. There is no federal question jurisdiction on this basis.

### 2. Artful Pleading Doctrine

 Defendant also claims that this Court has subject matter jurisdiction over the complaint because Plaintiff has "artfully pleaded" her federal law claims as state law claims. Although a plaintiff is master of its complaint, a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint. *Franchise Tax Bd.,* 463 U.S. at 22, 103 S.Ct. at 2852–53. Thus, it is the actual nature of a plaintiff's claim which

supports, or precludes, the exercise of federal jurisdiction. *Parell,* 783 F.2d at 367 (indicating that courts "will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization"). According to a leading commentator:

[I]n many contexts plaintiff's claim may be one that is exclusively governed by federal law, so that the plaintiff necessarily is stating a federal cause of action, whether he chooses to articulate it that way or not. If the only remedy available to plaintiff is federal, because of preemption or otherwise, and the state court necessarily must look to federal law in passing on the claim, the case is removable regardless of what is in the pleading. If, however, there is a choice between federal and state remedies, the federal court will not ignore the plaintiff's choice of state law as the basis for the action.

14A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3722 (2d ed. 1985). As stated above, however, a defendant cannot remove a case "on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar,* 482 U.S. at 393, 107 S.Ct. at 2430. Thus, the mere existence of a colorable issue as to whether federal law preempts the state law claims pleaded in the complaint is insufficient to provide a basis for removal to federal court.

 Defendant asserts that Plaintiff has artfully pleaded her common law claims for fraud and negligent misrepresentation as state law claims when, in fact, they are governed exclusively by federal common law.[2] In support, Defendant relies on *MCI Telecomm. Corp. v. Teleconcepts, Inc.,* ("*MCI*"), 71 F.3d 1086 (3d Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 64, 136 L.Ed.2d 25

---

**2.** The Court notes that Plaintiff's claims of fraud and negligent misrepresentation do not rely expressly on either state or federal law. In the absence of any indication that Plaintiff intended to invoke federal common law, however, the Court concludes that, facially, the claims are grounded exclusively on New Jersey common

law. *See Goepel v. National Postal Mail Handlers Union,* 36 F.3d 306 (3d Cir.1994) (concluding that the plaintiff's breach of contract and unconscionability claims, which did not rely expressly on either state or federal law, were facially state common law claims).

(1996).[3] In *MCI*, the plaintiff telephone company brought an action against a pay telephone owner, seeking to recover for unpaid services provided under the company's tariffs. The Third Circuit held that the collection of unpaid charges for long distance telephone service under an FCC tariff "arises under" federal law, because "MCI's action is based upon and draws its life from the tariff filed with the [FCC]" *Id.* at 1096. Based upon this conclusion, the Third Circuit held that MCI's collection suit was premised upon federal common law.

Defendant, relying upon *MCI*, and similar cases, argues that plaintiff's fraud claim, like the collection claim in *MCI*, draws its life from the tariff and therefore must arise, if at all, under federal common law. This Court disagrees. That common law may govern collection suits and similar claims which draw their life from the tariff does not mean that *all* claims which in *any way* implicate the practice of a regulated common carrier, are similarly governed by Federal law. Although the *MCI* court concluded that Congress intended collection claims to be governed by uniform Federal law, *id.* at 1094, the Court can divine no particular congressional intent to apply uniform federal common law to advertising and promotional practices, nor any compelling practical necessity to do so. Similarly, in *Weinberg v. Sprint Corp.*, 165 F.R.D. 431 (D.N.J.1996), where plaintiff alleged that defendant committed fraud by failing to disclose some of its billing practices, the Court rejected the defendant's contention that its practices should be judged by a uniform standard of federal law, stating:

> Clearly Congress has evidenced an intent to achieve a uniform telecommunications system through the application of federal law to the standards of services provided by common carriers. *See MCI Telecommunications*, 71 F.3d at 1094. The Court, however, is unable to locate any indication of a Congressional intent to apply federal law uniformly to challenges

to a common carrier's advertising and promotional practices.

165 F.R.D. at 439 n. 6.

In short, while the Third Circuit in *MCI* concluded that Federal common law governs claims which are integrally connected to the regulated tariff process, its opinion does not suggest that such remote subjects as advertising or promotional activities are also covered. This Court concludes that they are not.

Based on the above, the Court holds that a straightforward application of the well-pleaded complaint rule precludes a finding of original federal jurisdiction in this case. As set forth in the Complaint, Plaintiff's claims are based on New Jersey common law and statutory law, without reference to federal law. The claims relate solely to Defendant's alleged misrepresentations in its advertising and marketing and do not depend on any provision of federal law for their resolution. Because this Complaint cannot satisfy the requirements of the "well-pleaded complaint" rule, this Court does not have federal question jurisdiction.

### B. *Complete Preemption Doctrine*

 Defendant also maintains that federal jurisdiction exists because Plaintiff's claims are completely preempted by the Federal Communications Act. The complete preemption doctrine, a narrow independent corollary to the well-pleaded complaint rule, provides that "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metropolitan Life*, 481 U.S. at 63–64, 107 S.Ct. at 1546. Once Congress completely preempts an area of state law, "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393, 107 S.Ct. at 2430. Regardless of the nature of a plaintiff's claim, therefore,

---

**3.** Much of Defendant's argument discusses the holding in *Ivy Broad. Co. v. American Tel. & Tel. Co.*, 391 F.2d 486 (2d Cir.1968). Because *Ivy* was decided by the United States Court of Appeals for the Second Circuit, however, it is merely persuasive authority except to the extent it was adopted by the Third circuit in *MCI*. Therefore, this opinion focuses on the Third Circuit's *MCI* decision and the extent to which that decision supports Defendant's claims.

federal jurisdiction is always appropriate under the complete preemption doctrine.

██ The Supreme Court has narrowly interpreted the scope of the complete preemption doctrine. Since 1968, the Supreme Court has found complete preemption expressly in only two settings: (1) claims alleging a breach of a collective bargaining agreement that fall under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1988), *see Avco Corp. v. Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), and (2) claims for benefits or enforcement of rights under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(1)(B) (1988), *see Metropolitan Life,* 481 U.S. at 63–67, 107 S.Ct. at 1546–48. Indeed, in a well-noted concurrence, Justice Brennan stated, "In future cases involving [the application of the complete preemption doctrine to] other statutes, the prudent course for a federal court that does not find a clear congressional intent to create removal jurisdiction will be to remand the case to state court." *Metropolitan Life,* 481 U.S. at 67–68, 107 S.Ct. at 1548. Thus, as with remand motions generally, all doubts should be resolved against removal and in favor of remand to the state court. *Boyer,* 913 F.2d at 111 (3d Cir.1990).

██ The Third Circuit has crafted a two-prong test to determine the applicability of the complete preemption doctrine. *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.,* 858 F.2d 936, 942 (3d Cir.1988). First, the purported preempting statute must contain "civil enforcement provisions within the scope of which the plaintiff's state claim falls." *Id.* at 942. If this is satisfied, the Court must then determine "whether there is a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Id.* Nevertheless, it is only "a very limited area in which a federal court . . . [may] recharacterize what purports to be a state law claim as a claim arising under a federal statute." *Id.* Here, the FCA does not satisfy either prong of the Third Circuit test and, therefore, this Court does not have removal jurisdiction.

### 1. Civil Enforcement Provisions Within the Federal Communications Act

██ Defendant makes two different arguments in support of its contention that the first prong of the *Railway* test for complete preemption is satisfied. The first prong of the *Railway* test requires the FCA, if it completely preempts Plaintiff's state law claims, to contain civil enforcement provisions within the scope of which Plaintiff's state claims fall. Sections 206 through 209 are the civil enforcement provisions for the FCA. Section 206 makes common carriers—like Defendant—liable for damages sustained by any person as a consequence of the carrier's actions in violation of the Act.[4] Sections 208 and 209 authorize any person or group of persons to complain about violations of the Act to the Federal Communications Commission ("FCC") and to collect damages which result from any such violation.[5] Finally, Sec-

---

4. Section 206 states:

In case any common carrier shall do, or cause or permit to be done, any act, matter or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fees shall be taxed and collected as part of the costs in the case.

5. Section 208(a) states:

Any person, any body politic or municipal organization, or State commission, complaining of anything done or omitted to be done by any common carrier subject to this chapter, in contravention of the provisions thereof, may apply to said Commission by petition which shall briefly state the facts, whereupon a statement of the complaint thus made shall be forwarded by the Commission to such common carrier, who shall be called upon to satisfy the complaint or to answer the same in writing within a reasonable time to be specified by the Commission. If such common carrier within the time specified shall make reparation for the injury alleged to have been caused, the common carrier shall be relieved of liability to the complainant only for the particular violation of law thus complained of. If such carrier or carriers shall not satisfy the complaint within the time specified or there shall appear to be any reasonable ground for investigating said

tion 207 gives an individual harmed by violations of the Act the choice to pursue a complaint in the district court or before the FCC, but precludes that person from pursuing both such remedies.[6]

Defendant first contends that section 203 of the FCA affords the substantive rights which Plaintiff seeks to enforce. Section 203 requires that every common carrier "file with the Commission and print and keep open for public inspection schedules showing all charges for itself and its connecting carriers." 47 U.S.C. § 203(a). If a carrier fails to file tariffs, or files deceptive tariffs, a subscriber has a remedy under § 207 to recover damages in either federal court or from the FCC for the carrier's failure to comply with its disclosure duties under the Act. If the subscriber feels that the tariffed disclosures are inadequate or that the carrier ought to make additional disclosures of its rates, the Act permits the subscriber to make complaint to the FCC, which is then obligated to conduct an appropriate investigation, or subscribers may file comments in the FCC's rulemaking proceedings. See 47 U.S.C. § 208(a). Defendant characterizes Plaintiff's action as one which challenges Defendant's disclosure of its rates for tariffed service and therefore argues that section 207 encompasses Plaintiff's claims.

Although sections 206 through 209 provide a federal remedy for violations of the FCA, they fail to satisfy the first prong of the *Railway* test because Plaintiff's state law claims do not fall within these civil enforcement provisions. Under the complete preemption doctrine, the civil enforcement provisions of the purported preempting statute must vindicate the same interest that the plaintiff's state causes of action seek to vindicate. *Railway Labor Executives Ass'n*, 858 F.2d at 942. "If the federal statute provides no provision for adjudication of the right plaintiff seeks to enforce, then no claim arises under federal law, and removal [is] improper." *Weinberg*, 165 F.R.D. at 438. Although section 207 authorizes federal jurisdiction over claims to enforce a carrier's compliance with the tariff-filing requirements of the Federal Communications Act, section 203 is not challenged; Plaintiff does not argue that Defendant's rates deviate from those that are filed with the FCC. Rather, Plaintiff argues that Defendant misrepresents its calling plans in its marketing and advertising practices. The FCA does not impose any duty on common carriers to be truthful in their promotional practices. Although a successful challenge under sections 203 and 207 of the FCA may yield the same *remedy* as that sought by Plaintiff, *i.e.*, the difference between the two filed rates, the "issue is not whether the federal law provides the same remedy available to Plaintiff under state law, but rather whether there is some vindication for the same interest." *Railway Labor Executives Ass'n*, 858 F.2d at 942 n. 2. The relevant sections of the Act simply do not address the interests underlying Plaintiff's complaint.

The Court notes that this conclusion is in accord with the decisions of the other courts which have addressed the issue. In *Weinberg*, the plaintiff brought claims identical to those in this litigation—fraud, negligent misrepresentation, and violation of New Jersey's Consumer Fraud Act—and similarly alleged that the defendant telephone company utilized deceptive and misleading advertising and promotional practices in order to

---

complaint, it shall be the duty of the Commission to investigate the matter complained of in such manner and by such means as it shall deem proper. No complaint shall at any time be dismissed because of the absence of direct damage to the complainant.
Section 209 states:
If, after hearing on a complaint, the Commission shall determine that any party complainant is entitled to an award of damages under the provisions of this chapter, the Commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named.

**6.** Section 207 states:

Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

lure customers to use its services. In that case, Judge Pisano held that section 207 of the FCA provided no remedy for the conduct on which the plaintiff based his claims since the FCA imposed no duty on common carriers "to make accurate and authentic representations in their promotional practices." *Weinberg*, 165 F.R.D. at 438. Judge Pisano concluded that the federal statute did not protect the interests that the plaintiff sought to vindicate and that, therefore, the first prong of the *Railway* test was not met. Likewise, Judge Kugler in *DeCastro v. AWACS, Inc.*, 935 F.Supp. 541 (D.N.J.1996), explicitly relied on *Weinberg* to hold that section 207 does not provide a federal cause of action for two claims centering around the defendant's alleged failure to disclose a particular billing practice. The Court finds the reasoning of these two opinions to be persuasive.

Defendant next argues that the alleged marketing and advertising misrepresentations in Plaintiff's complaint are within the scope of section 207 since the FCC has the power, in response to a complaint about inadequate tariff disclosures, to compel additional disclosures through the federal rulemaking process. *See, e.g.*, 47 C.F.R. § 64.1110; *In re Policies and Rules Concerning Changing Long Distance Carriers*, CC Docket No. 91–64, 7 F.C.C.R. 1038 (1992), *reconsideration denied*, 8 F.C.C.R. 3215 (1993); *In re American Telephone and Telegraph Co. Petition for Rulemaking*, CC Docket No. 91–64, 6 F.C.C.R. 1689 (1991). Defendant has cited no authority—and the Court has found none—for the proposition that either the federal rulemaking process or administrative complaints satisfy the civil enforcement requirement for complete preemption. The Court finds no basis for extending the first prong of the *Railway* test to these areas in light of the Supreme Court's conservative approach to the complete preemption doctrine and therefore finds that Plaintiff's state law claims do not fall within the scope of the civil enforcement provisions of the FCA.

### 2. No Congressional Intent for Removal

■ The second prong of the *Railway* test requires a clear indication of congres-

sional intent to permit removal despite the plaintiff's exclusive reliance on state law. Both the Supreme Court and the Third Circuit have emphasized that the pertinent Congressional intent is one to permit *removal*, and not one to preempt state law. The Third Circuit has stated explicitly:

> If there is no affirmative indication of the requisite Congressional intent to permit removal, there can be no "complete preemption." If there is no such intent, the district court need not and should not address the issue of whether the state substantive law relied upon by the plaintiff has been preempted by federal law.

*Railway Labor Executives Ass'n*, 858 F.2d at 942. In addition, Justice Brennan's concurrence in *Metropolitan Life* explicitly emphasized the narrowness of the Supreme Court's opinion. He stated:

> The Court rejects the position, urged by respondent, that removal jurisdiction exists only when the complaint states a claim that is "obviously" pre-empted by state law—that is, when a federal statute has obviously preempted state law, or when a decision of this Court has construed an ambiguous federal statute to pre-empt state law. The Court instead focuses on the "intent of Congress" ... to make respondent's cause of action removable to federal court....
>
> While I join the Court's opinion, I note that our decision should not be interpreted as adopting a broad rule that any defense premised on congressional intent to preempt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, "Congress has clearly manifested an intent to make causes of action ... *removable* to federal court."

481 U.S. at 67–68, 107 S.Ct. at 1548 (emphasis added). Thus, only the clear intent of Congress to establish removal jurisdiction satisfies the second prong of the *Railway* test, even if the federal statute obviously preempts state law claims. Here, the FCA cannot satisfy the second prong because Congressional intent to permit removal is wanting.

### a. Pre-existing Preemption Law

According to Defendant, prior to enacting the FCA, the preexisting law clearly provided that federal law exclusively governed a telephone company's duties with respect to interstate service and that such claims were removable to federal court. In support, Defendant explains that the FCA was modeled on the Interstate Commerce Act ("ICA"), 49 U.S.C. § 22, which contains the same tariff-filing provisions, jurisdictional provisions, and savings clause as the FCA. Congress copied these provisions virtually "verbatim" from the ICA, occasionally "simplif[ying]" or "clarif[ying]" the original text "for the purpose of clarification in their application to communications, rather than as a manifestation of congressional intent to attain a different objective." S.Rep. No. 73–781, at 2, 4 (1934); *see* H.R.Rep. No. 73–1850, at 4–6 (1934). Defendant concludes that since the preexisting law held that the ICA completely "occupied the field" with respect to common-law claims against carriers of interstate telephone and telegraph service and because such claims were removable, Congress intended the FCA to be interpreted similarly.

Defendant cites a number of cases for the proposition that the ICA completely "occupies the field" to the exclusion of state law. *See e.g., Postal Telegraph–Cable Co. v. War-ren–Godwin Lumber Co.,* 251 U.S. 27, 32, 40 S.Ct. 69, 71, 64 L.Ed. 118 (1919) (holding that the 1910 amendments to the ICA constituted "an occupation of the field by Congress which excluded state action."); *Western Union Tel. Co. v. Boegli,* 251 U.S. 315, 316, 40 S.Ct. 167, 167–68, 64 L.Ed. 281 (1920) (holding that the 1910 amendments to the ICA "so clearly establish the purpose of Congress to subject such companies to a uniform national rule as to cause it to be certain that there was no room thereafter for the exercise by the several States of power to regulate" in this area). These cases, however, simply stand for the proposition that Congress intended federal law to preempt state law, and not for the proposition that Congress intended to permit removal despite the exclusive reliance on state law.

### b. Pre-existing Removal Law

Defendant asserts that Congress must be presumed to have been "thoroughly familiar with the unusually important precedents from [the Supreme Court] and other federal courts," *Cannon v. University of Chicago,* 441 U.S. 677, 699, 99 S.Ct. 1946, 1958, 60 L.Ed.2d 560 (1979), when it enacted the FCA with the express intention of "preserving pre-existing law" under the ICA. Defendant then cites a number of cases, predating the FCA, in which state causes of action in the realm of the ICA were removed to federal court. *See Southern Pac. Co. v. Stewart,* 245 U.S. 359, 361–62, 38 S.Ct. 130, 130–31, 62 L.Ed. 345 (1917) (removal of action for loss or injury to cattle shipped in interstate commerce), *rev'd on other grounds,* 248 U.S. 446, 39 S.Ct. 139, 63 L.Ed. 350 (1919); *Great Northern Ry. Co. v. Galbreath Cattle Co.,* 271 U.S. 99, 46 S.Ct. 439, 70 L.Ed. 854 (1926) (removal of action for injury to cattle shipped in interstate commerce); *see also Alabama Great S. Ry. Co. v. American Cotton Oil Co.,* 229 F. 11, 23 (5th Cir.1916); *Smith v. Atchison, T. & S.F. Ry. Co.,* 210 F. 988, 990 (D.Kan.1913); *McGoon v. Northern Pac. Ry. Co.,* 204 F. 998, 1005 (D.N.D.1913).

That this may be so does not, in any way, suggest that, in enacting the FCA, Congress gave a clear indication that it intended to permit claims such as this to be removed. Significantly, the demonstration made by defendant is substantially below that made in *Metropolitan Life.* There, the Court found that the language of the jurisdictional sections of ERISA "closely" paralleled the provisions of Section 301 of the LMRA, which the Supreme Court had previously held to be governed by the complete pre-emption doctrine. Additionally, the court noted that the legislative history of ERISA included a conference committee report which stated that suits under it:

> May be brought not only in U.S. District Courts but also in State Courts of competent jurisdiction. All such actions in Federal and State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under Section 301 of the Labor–Management Relations Act of 1947 H.R.Conf.Rep. No. 93–

1280, p. 327 (1974), U.S.Code Cong. & Admin.News 1974, pp. 4639, 5107. *Metropolitan Life Ins. Co.* 481 U.S. at 65–66, 107 S.Ct. at 1547–48.

Thus, it was Congress's knowledge of the prior interpretation of Section 301 of the LMRA, *coupled* with a *clear indication* by Congress that it desired ERISA's provisions to be interpreted in the same manner, which led the court to conclude in *Metropolitan Life* that the complete pre-emption doctrine applied to ERISA.

In this case, however, there is absolutely nothing to indicate that Congress intended the FCA to be given similar effect. Indeed, there is nothing in the legislative history of the FCA that suggests that Congress even considered whether or not state law cases could be removed under the FCA.

### c. The "Savings Clause"

Plaintiff argues that the existence of a "savings clause" in the FCA further supports its contention that Congress did not intend the complete preemption doctrine to apply. The Court agrees. The "savings clause" states:

> Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

47 U.S.C. Section 414. At least two New Jersey district courts have interpreted the savings clause as evidence that there is no Congressional intent for complete preemption. In *Weinberg,* Judge Pisano wrote:

> This 'savings clause' expressly preserves causes of action for breaches of duties that do not exist under the Act.... Further, the inclusion of such a clause appears to be inconsistent with a Congressional intent to completely preempt state law claims not addressed through the Act.... Inclusion of the savings clause 'clearly indicates Congress' intent that independent state law causes of action ... not be subsumed by the Act, but remain as separate causes of action....

165 F.R.D. at 439 (internal citations omitted). Likewise, Judge Kugler, in *DeCastro,* held that the savings clause is a "strong indication that Congress did not intend that the Act pre-empt all claims within the telecommunications area." 935 F.Supp. at 551. Judge Kugler further noted that "[m]any courts have relied upon this savings clause to find that Congress intended to preserve state law claims for breaches of duties which are distinguishable from duties created by the Act." *Id.* (listing cases).

In response, Defendant counters that the FCA's legislative history as well as contemporary legal precedent make clear that the "savings clause" in fact preserves only preexisting *federal* law, not state law. Because the savings clause was lifted virtually verbatim from the ICA, and because Congress intended the same objective in enacting the ICA and the FCA, *see* S.Rep. No. 73–781 (1934) (ICA provisions were reenacted in the FCA "for the purpose of clarification in their application to communications, rather than as a manifestation of congressional intent to attain a different objective"); *see also* H.R.Rep. No. 73–1850 (1934), precedent regarding the ICA's savings clause is highly persuasive in analyzing the FCA's savings clause. In *Adams Express Co. v. Croninger,* 226 U.S. 491, 507–08, 33 S.Ct. 148, 152–53, 57 L.Ed. 314 (1913), the Supreme Court construed the ICA's savings clause as preserving "any right or remedy which [a claimant] may have had [against an interstate carrier] under existing Federal law at the time of his action." Defendant, quoting *Croninger,* contends that the Supreme Court came to this conclusion because it judged the preservation of existing federal law as "a more rational interpretation than one which would preserve rights and remedies under existing state laws, for the latter view would cause the proviso to destroy the act itself." *Id.* at 507–08, 33 S.Ct. at 152. Therefore, according to Defendant, the FCA's savings clause preserves federal law only.

Defendant's interpretation of the holding in *Croninger* is broader than the Court intended. In *Croninger,* the plaintiff sought to recover, pursuant to state law, the full value of an undelivered interstate shipment from the defendant carrier. The Court found that the ICA's savings clause preserved only existing federal law with respect to the ICA

provision at issue and that therefore the state cause of action pleaded by the plaintiff was preempted. That holding, however, was based on *Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), a case in which the Court interpreted that same savings clause in connection with a different provision of the ICA. The Supreme Court, in *Croninger*, characterized *Texas & Pac. Ry. Co.* as holding that the ICA's savings clause preserved only those "rights or remedies for the redress of some specific wrong or injury, whether given by the Interstate Commerce Act, *or by state statute, or common law,* not inconsistent with the rules and regulations prescribed by the provisions of this act." 226 U.S. at 507, 33 S.Ct. at 152 (emphasis added). Accordingly, the Supreme Court held that the ICA's savings clause preserved only existing federal law with respect to the ICA provision in *Croninger* because the state cause of action in that case was inconsistent with the ICA, and not because the savings clause in all respects preserves only existing federal law.

Thus, the Court is satisfied that the savings clause does indeed evince an intent by Congress that the complete pre-emption doctrine is inapplicable to cases such as the one currently before the Court.

### 3. The Third Circuit Decision in *MCI Telecomm. v. Teleconcepts*

Finally, Defendant's arguments suggest that the decision in *MCI Telecomm. v. Teleconcepts, Inc.*, 71 F.3d 1086 (3d Cir.1995), stands for the proposition that the Third Circuit has ruled that the complete pre-emption doctrine applies to the FCA.[7] This Court rejects such a suggestion. The *MCI* opinion does not deal with the complete preemption doctrine at all—*and* does not even purport to apply the Third Circuit's *Railway* test. Instead, as discussed earlier, the case merely holds that Federal common law may be applied to some causes of action which are based upon the existence of a filed tariff. It is absolutely inconceivable that the Third Circuit would have decided such a significant issue as the applicability of the complete preemption doctrine to the FCA without

even attempting to analyze the issue under its own test *and* without even mentioning the case which established the test. Thus *MCI* simply does not support the contention, urged by defendant, that the complete preemption doctrine applies.

### IV. Conclusion

In sum, Defendant has not met its burden to establish adequate grounds to permit removal. For the reasons discussed above, Plaintiff's motion for remand will be granted. An appropriate order will issue.

---

**7.** For a discussion of *MCI,* see *supra* Section III(A)(2).