POLLAK, District Judge,
dissenting in part.
I dissent in part because I cannot conclude, as the court does, that the Federal Communications Act (FCA) contains a preemptive uniformity principle that could apply to a detarriffed market. The court acknowledges that “[t]he precise scope of the uniformity principle set out in §§ 201 and 202, however, is more difficult to ascertain than the scope of the filed-rate doctrine.... ” There is a reason that the scope of the doctrine cannot be ascertained. Detariffed markets are inherently disuniform. In such an environment, a “uniformity principle” is inherently unworkable.
The precedents that the court invokes to corroborate its interpretation of the FCA focused on the fact that, despite the absence of tariffs, carriers could only charge a single lawful rate, even if that rate was not published via tariff. See W. Union Tel. Co. v. Esteve Bros. & Co., 256 U.S. 566, 573, 41 S.Ct. 584, 65 L.Ed. 1094 (1921) (“Since any deviation from the lawful rate would involve either an undue preference or an unjust discrimination, a rate lawfully established must apply equally to all, whether there is knowledge of it or not.”); cf. Postal Tel.-Cable Co. v. Warren-Godwin Lumber Co., 251 U.S. 27, 31, 40 S.Ct. 69, 64 L.Ed. 118 (1919) (relying on field preemption to prevent application of state law, whereas the majority here relies on conflict preemption).
In the current regulatory environment, charging different rates to customers may be lawful so long as such rates are not unreasonably discriminatory. The FCC has abandoned any interpretation of §§ 201 and 202 that would mandate a single lawful rate, as the cases the court relies upon conclude. See Orloff v. FCC, 352 F.3d 415, 420 (D.C.Cir.2003) (“Orloff is therefore not entitled to prevail merely by showing that she did not receive all the sales concessions Verizon gave to some other customers- — -that, in other words, Verizon engaged in discrimination. Verizon may still show that the difference in treatment was reasonable.”). The FCC has not only abandoned the tariff requirement of § 203, but also the requirement of § 1-3 of the Interstate Commerce Act mandating uniformity via a single lawful rate.
In a detarriffed environment telecom companies must instead (1) avoid charging rates that are “unjust or unreasonable” and (2) not engage in “unreasonable discrimination.” Under the court’s reasoning, §§ 201’s and 202’s uniformity principle should require a single lawful rate. However, there is no reason to limit this principle to policing the conduct of state governments, as the cases cited by the court have applied it to private entities as well. To do otherwise implies that the actions of numerous telecom companies entering into different terms in order to maximize profit does not result in disuniformity, but that the efforts of fifty state governments to protect consumers located within their borders constitutes unreasonable discrimination that must be stopped in the name of *1223 uniformity of already disuniform rates. Such a result shows the dissonance needed to come to the conclusion that any uniformity principle remains.
Lastly, the uniformity principle cannot be derived from FCC regulations. The court derives more from the FCC’s order on reconsideration than is clear from the text of the order. The court assumes that the FCC was stating its position on preemption under the FCA. However, the order on reconsideration might described, at best, as nebulous in regard to the extent of preemption. In response to a question about preemption, the FCC stated that “the Communications Act continues to govern determinations as to whether rates, terms, and conditions for interstate, domestic, interexchange services are just and reasonable, and are not unjustly or unreasonably discriminatory.” 12 FCC Red. 15014, 15056 (F.C.C.1997). In that very same paragraph the order states that “[a]s stated in the Second Report and Order, consumers may have remedies under state consumer protection and contract laws as to issues regarding the legal relationship between the carrier and customer in a detariffed regime.” Id. Later, in the same document, the FCC further states “[w]e also observed that eliminating the ability of carriers to invoke the ‘filed-rate’ doctrine benefits consumers by creating a legal relationship that more closely resembles the legal relationship between service providers and customers in an unregulated environment.” Id. at 15058. There is no dispute that the FCA governs, but federal law can apply without displacing state law, as is the normal situation in an environment without tariffing. In my view, the FCC has been manifestly ambiguous as to the extent of preemption.
Even if the FCC’s recital is read as concluding that state law is preempted, for that conclusion to merit a measure of deference it is not enough that the FCC’s mode of arriving at its decision was, as the court suggests, free of “procedural errors.” There is a further requirement. The Supreme Court has been at pains to point out that “[t]he weight we accord the agency’s explanation of state law’s impact on the federal scheme depends on its thoroughness, consistency, and persuasiveness.” Wyeth v. Levine, — U.S.-, 129 S.Ct. 1187, 1201, 173 L.Ed.2d 51 (2009). I do not find the brief statement in the order on reconsideration to be thorough, consistent, or persuasive, given that the FCC has abandoned uniform rates in favor of enforcing an “unreasonable discrimination” requirement.